UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**MERCURIA ENERGY GROUP LIMITED**,

        Petitioner,

        v.

**REPUBLIC OF POLAND**,

        Respondent.

Case No. 1:23-cv-03572 (TNM)

## MEMORANDUM OPINION

    Mercuria Energy Group Limited, a Cyprian company, believes that the Republic of Poland owes it interest related to a now-refunded fine it paid nearly two decades ago.  After its litigation efforts in Poland stalled, Mercuria turned to arbitration.  The arbitration played out in Sweden, and Mercuria secured a significant award against Poland.  But a Swedish court annulled that award.  And it did so because a series of cases from the European Union's high court have largely invalidated the use of arbitration to resolve disputes between European Union members.

    Mercuria sees things differently.  It asks this Court to ignore those decisions and allow Mercuria to enforce its annulled award in the United States.  Mercuria asserts this is warranted because the decisions of the European courts are so egregiously unfair that they violate basic notions of fairness.  The Court disagrees.  Absent public policy concerns—which are not present here—precedent requires the Court to respect the decisions of the European courts.  And it will do so by denying Mercuria's petition for award enforcement.

## I.

In 2008, Poland imposed a financial penalty of over $100 million plus interest on one of Mercuria's subsidiaries. *See* Pet. to Confirm Arb. Award ("Pet."), ECF No. 1, ¶¶ 7, 10. Mercuria itself is based in Cyprus, but it has a subsidiary named JSE incorporated in Poland. *See* Pet. ¶ 2; Resp't's Mot. Dismiss ("Mot. Dismiss"), ECF No. 28, at 20–21. Mercuria and JSE are in the business of importing and trading petrochemicals, and the penalty was based on JSE's alleged failure to "establish and maintain compulsory stocks of liquid fuels as prescribed by Polish law." *See Id.*; Pet. ¶ 10. Mercuria and JSE then challenged the fine in a Polish court. *See* Mot. Dismiss at 22.

After litigation, a Polish court overturned the penalty. *See id.*; Pet. ¶ 14. Poland then repaid Mercuria the full penalty but did not compensate the company for its interest payments. Pet. ¶ 15. Mercuria believed it was entitled to interest and pressed the issue, first with Polish administrative agencies and then in Polish court. *Id.* ¶¶ 16–17. After a decade of unsuccessful efforts, Mercuria resorted to arbitration in Sweden in 2019. *See id.* ¶¶ 7, 32–33.

The arbitration was anchored in Article 26 of the Energy Charter Treaty ("ECT"). *Id.* ¶ 8. The ECT is a 1994 multilateral energy sector treaty that sought to integrate Central and Eastern European states into Western Europe's market economy system. First Decl. of Prof. Steffen Hindelang ("First Hindelang Decl."), ECF No. 10, ¶ 17. Article 26 includes a standing arbitration clause, allowing investors from one state to dispute the treatment of their investments in another state. *See* Pet. ¶ 22. Sweden is one of the available arbitral forums under the ECT. *See id.* Both Poland and Cyprus are signatories to the ECT and members of the EU. Pet. ¶¶ 20–21.

Following a heavily litigated arbitration hearing in which both parties participated, a Swedish tribunal ruled for Mercuria in 2022. Pet. ¶¶ 33–39, 41. Over Poland's objection, the tribunal concluded that it had jurisdiction to hear the dispute and then awarded Mercuria tens of millions of dollars. *See* Pet. ¶¶ 40, 43.

In February 2023, Poland filed an application with Sweden's high court, the Svea Court of Appeal, to annul the award. Decl. of Martin Wallin ("Wallin Decl."), Ex B, ECF No. 11-2. In its application, Poland reasserted its jurisdictional objections. *See id.* ¶¶ 18, 27–30. It alleged that under EU precedent, the ECT's arbitration clause does not allow for arbitration of intra-EU disputes where both states are EU members. *See id.* Given the potential impact the Svea Court's decision could have on Mercuria's petition, the court stayed proceedings pending the outcome. *See* Stay Order, ECF No. 26.

The parties extensively litigated their positions before the Svea Court, submitting four rounds of briefing. *See* Mot. Dismiss at 35. In the end, the Svea Court sided with Poland and issued a decision invalidating Mercuria's arbitration award. *See Poland v. Mercuria Energy Grp. Ltd.*, Case No. T 2613-23, (Svea Ct. App., Dec. 23, 2024) (Swed.) ("Svea Ct. App. Judgment"), ECF No. 28-3. The annulment rests on a series of decisions from the European Court of Justice ("CJEU") limiting the availability of arbitration to resolve disputes between two EU member states. *See id.* at 11–13.

The first of these was *Slovak Republic v. Achmea B.V.*, EU:C:2018:158 (March 6, 2018). There, the CJEU rejected the use of arbitration clauses in bi-lateral treaties if both signatories are members of the EU. *See id.* ¶¶ 56–60. Following *Achmea*, nearly two dozen EU states issued a joint declaration in early 2019 notifying their citizens that intra-EU "investor-State arbitration clauses . . . are contrary to [European] Union law and thus inapplicable." *See* First Hindelang

Decl., Ex. 13, ECF No. 10-13, at 2. Though *Achmea* discussed only *bi*-lateral treaties, not *multi*-lateral treaties like the ECT, the states cautioned that the ECT's arbitration clause was likely invalid too. *See id.* at 3. Mercuria's home state of Cyprus was among the declaration's signatories. *See id.* at 13. Despite the declaration's warning to "the investor community that no new intra-EU investment arbitration proceeding should be initiated," *id.* at 4, Mercuria forged ahead with arbitration against Poland nine months later. *See* Pet. ¶ 32.

The joint declaration's warning proved prescient. As predicted, the CJEU later extended *Achmea*'s reasoning to invalidate intra-EU arbitration clauses in multi-lateral agreements like the ECT. *See Repub. of Moldova v. Komstroy*, EU:C:2021:655 (September 2, 2021). In *Komstroy*, the CJEU specifically targeted Article 26 of the ECT—the provision Mercuria relied on for arbitration. According to the CJEU, applying Article 26 to disputes between two EU member states would be manifestly incompatible with the EU's governing legal framework.

Why? Because under the EU's legal system, a body that interprets and applies EU law must be "subject to mechanisms capable of ensuring the full effectiveness of the rules of the European Union." *Komstroy* ¶ 51. EU courts satisfy this requirement because they can refer questions on EU law to the CJEU for guidance; but arbitration tribunals lack any such referral mechanism. *See id.* ¶ 53. Because the ECT "is an act of EU law," any arbitration under Article 26 requires the arbitrators to interpret and apply provisions of EU law. Svea Ct. App. Judgment at 12; *see also Komstroy* ¶ 50 ("[A]n arbitral tribunal such as that referred to in Article 26(6) ECT is required to interpret, and even apply, EU law."). So allowing arbitration tribunals to weigh in on the contours of EU law without CJEU guardrails violates the fundamental legal structure of the EU. At least so says the CJEU.

4

Against this backdrop, the Svea Court found that the arbitration leading to Mercuria's award was "incompatible with the fundamental rules and principles governing the legal system in the EU and thus also in Sweden." Svea Ct. App. Judgment at 13. It thus "declare[d] the arbitral award invalid." *Id.* at 16. The Svea Court also awarded Poland attorney's fees based on the EU's default "loser pays" rule. *See id.* at 15. The judgment is final and not appealable. *See id.* at 16.

Now that the dust has settled, here is where things stand. Poland moves to dismiss based on sovereign immunity or to deny the petition on the merits because there is no longer an award to enforce. *See* Mot. Dismiss at 1. Mercuria opposes, arguing that this Court is not bound by the Svea Court's decision and should enforce the award anyway because the invalidation is contrary to public policy. Pet'r's Mot. Dismiss Opp'n ("Opp'n"), ECF No. 29, at 7–12. The European Commission also submitted an amicus brief in support of Poland. European Commission Amicus Curiae Br. ("Amicus Br."), ECF No. 41. The Court now turns to these questions.[1]

## II.

Foreign states are generally immune from suit under the Foreign Sovereign Immunities Act ("FSIA"). 28 U.S.C. § 1604. But there are several exceptions, including one that allows actions to enforce arbitration agreements. 28 U.S.C. § 1605(a)(6); *see also LLC SPC Stileks v. Rep. of Moldova*, 985 F.3d 871, 877 (D.C. Cir. 2021). These exceptions are the "sole basis for obtaining [subject matter] jurisdiction over a foreign state." *Tethyan Copper Co. v. Islamic Rep. of Pakistan,* 590 F. Supp. 3d 262, 269 (D.D.C. 2022). If a court has subject matter jurisdiction

---

[1] Mercuria requested oral argument in its brief. Opp'n at 1. The Court has considered that request but finds that oral argument is unnecessary to adjudicate Mercuria's petition. *See United States v. Cooley*, 63 F.4th 1173, 1176 (8th Cir. 2023) ("A hearing is not required if a dispute can be resolved on the basis of the record.").

under FSIA, it statutorily has personal jurisdiction over the foreign sovereign as well. *See Schubarth v. Fed. Rep. of Germany*, 891 F.3d 392, 397 n.1 (D.C. Cir. 2018) (citing 28 U.S.C. § 1330(b)).

### III.

### A.

The Court starts, as it must, with jurisdiction. Poland has a right to resolve sovereign immunity as a threshold matter before briefing the merits of the petition. *See Process & Indus. Devs. Ltd. v. Fed. Repub. of Nigeria*, 962 F.3d 576, 585–86 (D.C. Cir. 2020) ("[A] foreign sovereign may forgo its entitlement to a threshold determination of immunity . . . by opting to brief all of its defenses together."). Bifurcation is optional though, *see id.*, and Poland addresses both jurisdiction and merits in the same brief. *See* Mot. Dismiss at 9–10 (acknowledging this); *id.* at 29, 32 (briefing on sovereign immunity and merits). The Court can thus resolve jurisdiction and merits simultaneously. *See Process & Indus. Devs.* at 585–86. To ensure that Mercuria gets the final word as the petitioner, the Court allowed Mercuria to file a sur-reply on the merits. *See* ECF No. 31.

Poland says that sovereign immunity is a bar to the Court's jurisdiction. *See* Mot. Dismiss at 29. But the Court agrees with Mercuria that FSIA's arbitration exception applies. *See* Opp'n at 27. This carveout to sovereign immunity gives courts jurisdiction over petitions "to confirm an award made pursuant to" an arbitration agreement if the foreign state formed the agreement "with or for the benefit of a private party."[2] *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1100 (D.C. Cir. 2024) (quoting 28 U.S.C. § 1605(a)(6)).

---

[2] The ECT was made "'for the benefit' of the signatory's investors, and therefore satisfies the FSIA's arbitration exception." *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1103 (D.C. Cir. 2024).

6

Mercuria bears the initial burden of production to show: "(1) an arbitration agreement, (2) an arbitration award, and (3) a treaty potentially governing award enforcement [in the United States]." *Id.* (citing *Chevron Corp. v. Ecuador*, 795 F.3d 200, 204 & n.2 (D.C. Cir. 2015)). The burden then flips to Poland to establish by a preponderance that Mercuria's initial production is factually deficient. *Id.* (quoting *Chevron*, 795 F.3d at 204).

To meet the first requirement, Mercuria produced the ECT's arbitration clause and a notice of arbitration. *See* ECT, ECF No. 1-6, at 81–84 (Article 26 arbitration clause); Arb. Not., ECF No. 1-8; *Chevron*, 795 F.3d at 205 (finding these two things sufficient to make a "prima facie showing that there was an arbitration agreement"). Second, it produced its arbitration award. Award, ECF No. 1-5. And third, for the treaty governing award enforcement, Mercuria points to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38. Pet. ¶¶ 1, 53. Poland disputes the first two requirements. *See* Mot. Dismiss at 30.

Poland's counterarguments rest on the Svea Court's invalidation of the agreement and annulment of the award. *See id.* It says that because there is no longer a valid arbitration agreement or an award, FSIA's arbitration exception does not apply. But the Court has seen this film before, and the ending has not changed. Poland's argument is foreclosed by the D.C. Circuit's *NextEra* decision.

Start with the arbitration agreement. Poland gives several reasons why it believes the agreement was never legally valid. *See* Mot. Dismiss at 31. And true, the CJEU's *Komstroy* decision holds as much. But Poland's argument puts the cart before the horse. "For jurisdictional purposes, the FSIA's arbitration exception requires that the arbitral tribunal 'purported to make an award pursuant to the ECT, not that it in fact did so.'" *NextEra Energy*,

7

112 F.4th at 1104.  Put another way, what matters for jurisdiction is that the arbitration tribunal *believed* it could render a decision under the ECT.  The arbitration panel here spent dozens of pages justifying its reliance on the ECT.  *See* Award at 6, 111–164.  At the jurisdiction stage, that is enough.

The same goes for the existence of an arbitration award.  The Svea Court annulled the award, which could not have happened without the existence of an award.  So again, Poland's argument skips ahead to the merits of enforcing the now-defunct award but does not undermine the existence of an award for jurisdictional purposes.  *See, e.g.*, *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 932, 939–40 (D.C. Cir. 2007) (affirming a finding of jurisdiction in an enforcement proceeding where the award was previously invalidated).  More, the New York Convention directly discusses the implications of annulment, recognizing that courts "may" refuse to enforce invalidated awards.  New York Convention, Art. V(1)(e).  That provision would be wholly unnecessary if annulment were automatically sufficient to defeat jurisdiction.

Thus, Mercuria has put forth sufficient facts to establish the arbitration exception, and Poland's rebuttal does not call those facts into doubt.  The Court is satisfied that FSIA's arbitration exception applies and gives the Court jurisdiction to hear Mercuria's petition.

**B.**

Now, the merits.  The parties agree on the rules, but not how they cache out.  *Compare* Mot. Dismiss at 32–33 *and* Opp'n at 32–33 (both applying New York Convention, Art. V(1)(e) and *TermoRio*).  Courts may refuse confirmation where, as here, the award "has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made."  New York Convention, Art. V(1)(e).  Refusal is not mandatory, but the D.C. Circuit has explained that courts "normally may not enforce an arbitration award that has been

lawfully set aside by a competent authority in the" state where the arbitration was held. *TermoRio*, 487 F.3d at 935. Put another way, though courts weighing enforcement of defunct awards retain some discretion, "the power and authority of the local courts of the rendering state remain of paramount importance." *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" US, Inc.*, 126 F.3d 15, 22 (2d Cir. 1997).

There is a caveat though: Foreign judgments annulling awards need not be recognized if they are "repugnant to fundamental notions of what is decent and just in the" United States. *TermoRio*, 487 F.3d at 938. Repugnant judgments include those that "clearly . . . undermine the public interest, the public confidence in the administration of the law, or security for individual rights of personal liberty or of private property." *Id.* This "standard is high, and infrequently met." *Id.* Without any affront to public policy, "the district court is obligated to afford comity to the [Svea Court's] judgment and must decline to enforce the arbitral award that the [Svea Court] set aside." *Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 40 F.4th 56, 61 (2d Cir. 2022).

1.

The focus of the parties' dispute is the CJEU's *Komstroy* opinion. As Mercuria recognizes, that decision all but mandated the award annulment. *See* Opp'n at 34 ("[I]t is virtually indisputable that the Svea Court's decision was dictated by" *Komstroy*.). Mercuria starts by trying to make an end run around *Komstroy*. It suggests the Court need not accept *Komstroy*'s limitation on Article 26—and, by extension, the award annulment—because it is dicta. *See* Opp'n at 24, 38. Mercuria may read it as dicta, but EU states have not treated it that way. Multiple states signed a joint declaration announcing that "in *Komstroy* . . . the CJEU held that Article 26(2)(c) of the Energy Charter Treaty must be interpreted as not being applicable to

9

[investment] disputes between a Member State and an investor of another Member State." Second Decl. of Prof. Steffen Hindelang, Ex. 153, ECF No, 23-13, at 3; *see also* Amicus Br., ECF No. 41, at 21 n.8 (collecting EU cases that treat *Komstroy* and its predecessor *Achmea* as binding). Nor has the CJEU treated it as dicta. It cited *Komstroy* in a later decision, reiterating that the structure of EU law prevents the use of arbitration agreements to resolve intra-EU disputes. *See Repub. of Poland v. PL Holdings Sàrl*, EU:C:2021:875, ¶¶ 45–47 (October 26, 2021); *see also* Amicus Br. at 19.

It is not this Court's place to superintend EU courts as they interpret their own laws. Basic principles of comity shun such self-aggrandizement. *See TermoRio* at 937 ("The Convention does not endorse a regime in which secondary States (in determining whether to enforce an award) routinely second-guess the judgment of a court in a primary State."). Besides, even if the Court were to agree with Mercuria that dozens of EU courts are misreading *Komstroy*, "[e]rroneous legal reasoning or misapplication of law is generally not a violation of public policy within the meaning of the New York Convention." *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 306 (5th Cir. 2004).

More, there is good reason for the Court to refrain from armchair quarterbacking the EU's treatment of *Komstroy*. As Poland correctly points out, the issues underlying *Komstroy* "are of extraordinary importance . . . because they 'implicate the structure of the EU legal order, the role and jurisdiction of EU courts, the interpretation of EU law by non-EU adjudicatory bodies, and the future of the Energy Charter Treaty and investor-State arbitration within the EU.'" Reply, ECF No. 30, at 22 (quoting *NextEra*, 112 F.4th at 1110) (cleaned up). And "[t]he United States has no direct interest in the underlying disputes between . . . European parties . . . . Nor does the United States have a direct interest in the interpretation of the Energy Charter

Treaty, a treaty to which it does not belong." Reply at 22–23 (quoting *NextEra*, 112 F.4th at 1110)[3] (cleaned up).  Simply put, comity is at its zenith here because the issues are of utmost importance to the EU and minor significance to the United States. *See NextEra*, 112 F.4th at 1109 (finding "comity concerns near their peak" in analogous circumstances).

### 2.

But the question remains whether the Svea Court's decision, and by extension *Komstroy*, is "repugnant to fundamental notions of what is decent and just." *TermoRio*, 487 F.3d at 938; *see also* Opp'n at 34.  In challenging the award annulment, Mercuria relies heavily on a case in which public policy concerns led the Second Circuit to enforce an annulled arbitration award. *See* Opp'n at 32–41 (repeatedly comparing this case to *Corporacion Mexicana De Mantenimiento Integral, S. de R.L. de C.V. v. Pemex-Exploracion y Produccion*, 832 F.3d 92 (2d Cir. 2016)).

The arbitration in *Pemex* came about when a state-owned Mexican company unilaterally rescinded a contract with an American company. *See id.* at 98.  In the middle of arbitration, Mexico passed a new law declaring that state-owned companies could not arbitrate contract rescission disputes. *Id.* at 99.  The law also dropped the statute of limitations for such claims from 10 years down to 45 days. *Id.*  The practical effect was to shut the American company out of both arbitration and court and leave it without any recourse. *See id.* at 110.  But the arbitration panel continued its proceedings anyway and awarded damages to the American company. *See id.* at 99.  A Mexican court later invalidated the award by applying the new law retroactively to

---

[3] This part of *NextEra* focused on a district court's anti-suit injunction rather than the underlying arbitration enforcement petition. *See NextEra*, 112 F.4th at 1110.  The reasoning invoked general principles of comity though, so it remains applicable to the arbitration enforcement itself. *See id.* at 1105–09 (repeatedly stressing the importance of comity).

find the arbitration panel lacked jurisdiction. *See id.* The Second Circuit enforced the award under the New York Convention anyway. *See id.* at 100.

Mercuria paints its situation as "remarkably similar." Opp'n at 33. And the situation in *Pemex* faintly echoes this one insofar as both involve enforcement proceedings for an arbitration award that has been set aside. But the similarities end there. The "powerful" public policy considerations that drove the *Pemex* court to disregard the award annulment are largely absent here. *Id*. at 107.

At the forefront of the Second Circuit's decision was its recognition that "[r]etroactive legislation that cancels existing contract rights is repugnant to United States law." *Id.* at 108. Mexico's behavior was particularly odious because it also shut down the other avenues of relief the Americans could have pursued. *See id.*

Mercuria contends that is what happened here too. *See* Opp'n at 35–39. It argues that "U.S. law strongly disfavors the retroactive application of law." *Id.* at 35 (citing *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988)). And it marches out the views of those who say they understood the ECT to previously allow intra-EU arbitration, so the CJEU must be retroactively changing the law. *See id.* at 37–39.

But Mercuria misapprehends *Bowen*. There, the Supreme Court cautioned against retroactive *rulemaking* by an agency—not against judicial interpretations that explain how the law should always have been understood. *See Bowen*, 488 U.S. at 206 ("The question presented here is whether the Secretary may exercise . . . rulemaking authority to promulgate cost limits that are retroactive."). This distinction is key because a judicial interpretation correcting a previous misreading of the law does not offend notions of justice in the United States. *See Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 312–13 (1994) ("A judicial construction of a statute

is an authoritative statement of what the statute meant *before* as well as after the decision of the case giving rise to that construction." (emphasis added)). Indeed, this happens often. *See, e.g.*, *AT & T Corp. v. Hulteen*, 556 U.S. 701, 712 n.5 (2009) (approvingly discussing a decision that "declared the meaning and scope of sex discrimination under Title VII and held that previous views to the contrary were wrong as a matter of law"); *United States v. Jenkins*, 50 F.4th 1185, 1200 (D.C. Cir. 2022) (explaining that a case interpreting the career offender sentencing guideline "establishe[d] what that guideline meant 'before as well as after' the date it was decided"). Thus, while Mercuria frames *Komstroy* as a "change" in the law akin to the retroactive legislation in *Pemex*, the decision was really a correction in their *understanding* of the law. Public policy is not offended by the EU high court providing authoritative interpretations of EU law.

In *Pemex*, the Second Circuit also blanched at Mexico's "taking of private property without compensation for the benefit of the government." 832 F.3d at 110. The tension with the U.S. Constitution is readily apparent, as it forbids state seizure of property without compensation. *See id.* There is no outright expropriation here and Poland has not seized any of Mercuria's property. All that remains is a dispute over whether Mercuria is entitled to reimbursement of the interest it accrued on a loan used to pay a since refunded fine. So unlike the annulment in *Pemex*, the award annulment here does not "clearly . . . undermine . . . security for . . . private property." *TermoRio*, 487 F.3d at 938.

Taking a step back, these issues highlight that the public policy concerns in *Pemex* stemmed largely from the protectionist undertones at play in Mexico's actions. Both the legislature and judiciary in Mexico took slanted steps to ensure that national interests were favored at the expense of a U.S. company. The Court squints in vain to see any analogous

13

behavior here.  Neither the CJEU nor Sweden's Svea Court had any direct stake in the outcome of Mercuria's claim.  And neither had any allegiance to Poland that would foster incentives to improperly construe the law in Poland's favor against a European company.

Mercuria launches two counters.  First, it suggests the Svea Court may have felt pressure to annul the award in hopes of appeasing the European Commission.  *See* Opp'n at 38–39.  At the time, Sweden was facing an unrelated European Commission proceeding for failure to bring its domestic law into full compliance with *Achmea*.  *See id.*; *see also* Amicus Curiae Br. at 24. The European Commission is an "independent institution and acts in the interests of the Union as a whole, rather than individual Member States."  Amicus Br. at 8.  But Mercuria has already conceded that "the Svea Court's decision was dictated by" *Komstroy* rather than any improper reason.[4]  Opp'n at 34.

Second, Mercuria insinuates that *Komstroy* itself, "when viewed in the surrounding political circumstances, strongly suggests willful favoritism on the part of the EU's institutions in favor of their own Member States (and their treasuries) over private parties."  Opp'n at 39. Mercuria does little to develop this accusation beyond contending that "European states were facing—and losing—a multitude of ECT arbitration claims raising the prospect of billions of dollars' worth of damages."  *Id.* at 38 (citing Collins Decl., Energy Charter Treaty Statistics, ECF No. 29-2).  That is flimsy evidence to support such a weighty accusation.  The Court will not so readily assume the EU's high court has abandoned its commitments to impartiality and

---

[4] Plus, the European Commission itself rejects Mercuria's claim as "misleading" because the "proceedings did not concern courts' duty to set aside intra-EU awards; nor did they concern Poland's action to set aside Petitioner's award or indeed the ECT more generally."  Amicus Br. at 24.

justice. More is needed to "clearly . . . undermine . . . public confidence in the administration of the law." *TermoRio*, 487 F.3d at 938.

Continuing the comparison to *Pemex*, Mercuria frets that it will be left out in the cold without a remedy unless the Court enforces its award. *See Pemex*, 832 F.3d at 109 ("The imperative of having cases heard—somewhere—is firmly embedded in legal doctrine."). But as Mercuria itself recognizes, it is still welcome in Polish courts. Indeed, Mercuria prevailed in Polish court many times before resorting to arbitration. Its troubles come not from deprivation of a forum in which to litigate but from "Poland's refusal to comply with the orders of its own courts." Sur-Reply, ECF No. 31, at 20. Yet litigation on that front remains ongoing, and Mercuria launched its most recent attempt to force compliance through administrative channels earlier this year. Second. Decl. of Jaroslaw Kolkowski, ECF No. 33, ¶ 7.

Simply put, Mercuria's continued use of both the Polish court system and Polish administrative appeals process show it still has options. *Cf. Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003) (finding in the *forum non conveniens* context that "[a]n alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute."). The company disputes whether these options provide an *effective* remedy. *See* Opp'n at 39. But Mercuria's continued efforts belie a finding that these avenues are "so clearly inadequate or unsatisfactory" as to be "no remedy at all." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981).[5]

More, the Court is persuaded by Poland and the European Commission's position that Mercuria can make an end run around the Polish courts if they are ineffective. Reply at 20–21;

---

[5] This section of *Piper Aircraft* was discussing *forum non conveniens*. That doctrine involves distinct legal requirements, but the general principles surrounding the sufficiency of alternative forums are still informative in evaluating Mercuria's concerns.

Amicus Br. at 25. European law guarantees an effective remedy in national court. *See id.* If Mercuria truly believes its ongoing litigation in Poland is futile, it can bring a claim before the European Court of Human Rights ("ECHR") alleging the insufficiency of Poland's courts. *See id.* Mercuria disputes the effectiveness of this option too, because that court cannot render monetary judgments. Sur-Reply at 17. But it acknowledges that the ECHR *can* "direct Poland to return the funds Mercuria is owed." *Id.* In other words, it can provide a remedy. Between Mercuria's ongoing litigation in Poland and its access to the ECHR, the Court cannot agree that Mercuria is fully without recourse.

Mercuria also unsuccessfully tried these same arguments before the Svea Court, which rejected them for similar reasons. *See* Reply at 20–21; Svea Ct. App. Judgment at 8 (recounting Mercuria's contention that annulling the arbitral award "would . . . directly result in Mercuria being left without access to an effective remedy"). It reasoned that "declaring the arbitral award invalid . . . does not *per se* deprive the parties of the right to judicial review or the right to a fair trial." Svea Ct. App. Judgment at 15. So while the decisions of the CJEU and the Svea Court block Mercuria's ability to arbitrate its dispute under the ECT, they do not modify its ability to seek relief elsewhere. Though Mercuria must now contend with a new limitation in its quest for relief, it has not been fully shut out of court like the American company in *Pemex*.

In sum, there is no reason to find that the Svea Court's decision to invalidate Mercuria's award is contrary to American public policy. *Pemex* is not on point, and the lodestar guiding the Court's decision is *TermoRio*. Because the annulment is not "repugnant to fundamental notions of what is decent and just," *TermoRio*, 487 F.3d at 939, "the power and authority of the local courts [of Sweden] remain of paramount importance" and the Court will not second guess the outcome. *Toys "R" US*, 126 F.3d at 22.

As for Poland's request for attorney's fees and costs, Mot. Dismiss at 46, the Court sees no reason to depart from the default rule that each party pays its own costs. *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015) ("We have recognized departures from the American Rule only in specific and explicit provisions for the allowance of attorneys' fees under selected statutes." (cleaned up)). While the Svea Court awarded Poland costs, that decision is of little weight here because the default rule in Sweden is that the loser pays all costs. *See* Svea Ct. App. Judgment at 15. To the extent that Poland claims fees and costs are warranted because Mercuria violated a Svea Court order by seeking enforcement in this Court, there is no sign that the Svea Court has held Mercuria in contempt. *See* Mot. Dismiss at 46. If Poland has concerns, it should raise them first with the court whose order was allegedly violated.

## IV.

Mercuria is understandably frustrated by its loss of a significant arbitration award after years of protracted litigation. But the company had advanced notice that its arbitration efforts were likely to collapse in the face of CJEU precedent, yet it chose to forge ahead anyway. Mercuria now asks this Court to find not only that the EU's highest court and Sweden's highest court are wrong about EU law, but that they are *so* wrong that their decisions offend basic notions of justice. That goes too far. Mercuria had a fair opportunity to litigate its position before the Svea Court. And it did, extensively briefing its position and raising many of the same arguments it relied on here. In the end, things did not go Mercuria's way and the Svea Court applied CJEU precedent to annul Mercuria's Swedish arbitration award. The Court will respect that decision.[6]

---

[6] Because the Court declines to enforce the annulled award under Article V(1)(e) of the New York Convention, it does not reach Poland's additional arguments under Articles V(1)(a) and V(2)(b), and the *forum non conveniens* doctrine. *See* Mot. Dismiss 35–45.

For these reasons, the Court will deny Mercuria's petition for award enforcement and grant in part Poland's Motion to Dismiss insofar as it seeks that outcome. A separate Order will issue today.

Dated: September 8, 2025                                 TREVOR N. McFADDEN, U.S.D.J.